
DOCKETED
DEC 6 2002

WORLD IMPRESSIONS, INC., )
                                              )
         Plaintiff, )
                                                )     01 C 9797
          v. )    (Consolidated with 02 C 1318)
                                                  )
McDONALD'S CORPORATION and )    Judge George W. Lindberg
DISNEY ENTERPRISES, INC., )
                                                    )
         Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff World Impressions' complaint alleges unfair competition and trademark dilution under federal law (Counts I and II), common law trademark infringement and unfair competition (Count III), state law dilution (Count IV), and a violation of the Illinois Deceptive Trade Practices Act and Consumer Fraud and Deceptive Business Practices Act (Count V) against both defendants. Plaintiff's complaint also alleges a federal cybersquatting claim against defendant Disney Enterprises, Inc. ("Disney") (Count VI). These claims allege that defendants infringed plaintiff's "CALIFORNIA ADVENTURE" mark, when Disney named a new theme park "Disney's California Adventure," and McDonald's advertised the theme park in its restaurants.

Disney's counterclaims allege federal trademark infringement (Count I), unfair competition (Count II), and dilution (Count III) against plaintiff. These counterclaims allege that plaintiff infringed Disney's "DISNEYLAND" and "CASTLE DESIGN" marks by using a stylized version of the word "Disneyland" and a castle design on plaintiff's products.

Before the court are five motions: (1) defendants' motion to strike exhibits and portions of declaration and deposition testimony submitted in support of plaintiff's response; (2) Disney's



motion to strike portions of plaintiff's reply and related exhibits; (3) defendants' combined

motion for summary judgment as to plaintiff's complaint; (4) Disney's motion for summary

judgment as to its counterclaims; and (5) plaintiff's motion for summary judgment as to Disney's

counterclaims. For the reasons stated below, defendants' motion to strike portions of plaintiff's

response is granted in part and denied in part, Disney's motion to strike portions of plaintiff's

reply is denied, defendants' motion for summary judgment as to plaintiff's complaint is granted,

Disney's motion for summary judgment as to its counterclaims is granted, and plaintiff's motion

for summary judgment as to Disney's counterclaims is denied.

## I. Motion to Strike Portions of Plaintiff's Response to Defendants' Statement of Facts

At the outset, the court must evaluate defendant's motion to strike exhibits and portions

of declaration and deposition testimony submitted in support of plaintiff's response, and portions

of plaintiff's response. Defendants object to many of plaintiff's responses to defendants'

statement of material facts on the ground that these responses deny the asserted facts without

supporting the denials with citations to the record, or, where citations to the record are supplied,

on the ground that the citations do not adequately support plaintiff's denials. In addition,

defendants object to the manner in which plaintiff attempts to present additional facts in

opposition to defendants' motion for summary judgment. Defendants also object to plaintiff's

reliance on documents that defendants contend were not produced in discovery. The court

addresses each of these objections in turn.

### A. Plaintiff's Responses That Are Inadequately Supported

Under Local Rule 56.1(b), a response to a motion for summary judgment must contain "a

response to each numbered paragraph in the moving party's statement, including, in the case of

any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A). Where a party has not followed the local rules requiring a response to the moving party's statement of facts, supported by appropriate citations in the record, the moving party's facts remain uncontested. See, e.g., Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997). A district court may strike a response to a motion for summary judgment when the non-moving party fails to comply with local rules regarding that response. Rosemary B. ex rel. Michael B. v. Board of Educ., 52 F.3d 156, 158-59 (7th Cir. 1995).

The court agrees with defendants that the following paragraphs of plaintiff's response do not comply with Local Rule 56.1, as these responses deny the asserted facts without supporting the denials with specific references to the record: 5, 16, 19, 21, 25, 28, 29, 31-33, 36, 44-49, 51, 54-58, 62, 63, 65-67, 79, 80, 82-91, 93, 96-98, 100, 102, 104-07, 110, 112, 114, 117, 126-35, and 137-143. The court also agrees that plaintiff's citations to the record do not adequately support its denials in the following paragraphs: 24, 61, 64, 136, 144, and 145. These responses are stricken, and defendants' facts asserted in those paragraphs are deemed admitted.

Plaintiff's response to the portion of paragraph 34 that denies that the California State Parks publish certain maps and brochures is stricken as nonresponsive; however, there is no basis for defendants' knowledge as to how the word "adventure" is commonly used in the travel industry, and accordingly the court will disregard the first clause of defendants' paragraph 34. The court also disregards defendants' statement in paragraph 35, as their citation to the record does not support the statement in that paragraph. Although defendants urge the court to strike plaintiff's denial of the statements in paragraphs 52 and 60, on the basis that these denials are not supported by citations to the record, defendants' statements in these paragraphs are similarly

3

unsupported by citations to the record, and the court will disregard them.

Although plaintiff denies defendants' statement in paragraph 101 that Disney abandoned its registration application on November 26, 2000, citing a lack of knowledge, plaintiff states in its own response to paragraph 97 that Disney abandoned its trademark application on that date. Plaintiff's inconsistent statements could be, at worst, a Rule 11 violation. At best, plaintiff has admitted defendants' statement in paragraph 101. Plaintiff's denial is stricken.

Finally, the court declines to strike plaintiff's denial of the statement in paragraph 113 that Disney's registration application for its domain name did not contain any misleading information, since defendants' statement is conclusory.

### B. Plaintiff's Additional Facts in Opposition to Defendants' Motion for Summary Judgment

Defendants also object to the manner in which plaintiff attempts to present additional facts in opposition to defendants' motion for summary judgment. Plaintiff did not file a separate statement of additional facts requiring the denial of summary judgment. Instead, it attempts to present additional facts in its brief in response to the motion for summary judgment, and its response to defendants' statement of material facts. A response to a motion for summary judgment must contain "a statement...of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). The Seventh Circuit has "consistently and repeatedly required strict compliance" with Local Rule 56.1, including that rule's provision that a separate statement of additional facts must be filed. Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316-17 (7th Cir. 1995) (referring to this local rule by its prior designation, Rule 12(N)). This local rule "provides the only acceptable means of ... presenting additional facts to the district court."

Id. at 1317. The method plaintiff has chosen to present its additional facts to this court does not comply with the requirements of Local Rule 56.1. Therefore, the court will not consider the additional facts presented in its brief or its response to defendants' statement of material facts.

### C. Plaintiff's Reliance on Documents Not Produced in Discovery

In its response to defendants' statement of material facts, plaintiff relies on its exhibits 3, 4, 5, and 7 relating to plaintiff's transformation from a sole proprietorship to a California corporation, to a Washington corporation, and the transfers of assets (including intellectual property) that accompanied this transformation. Plaintiff cites to these exhibits in support of its denials of defendants' statements in two paragraphs. The first is paragraph nine, which states that "Mr. Sherby never assumed control of Mr. Wilkinson's sole proprietorship d/b/a World Impressions." The second is paragraph 23, which states that "Plaintiff did not produce, and cannot identify, any written agreement that even assigned any trademark that includes the words 'California Adventure' or any attached goodwill to World Impressions – California."

In their motion to strike, defendants charge that plaintiff did not produce these documents in discovery, even though they were responsive to defendants' request for documents supporting plaintiff's contention that it had continuously used the "CALIFORNIA ADVENTURE" mark since at least 1986, and documents reflecting any assignment of intellectual property. Defendants ask the court to strike these exhibits, as well as the portions of plaintiff's Declaration of Robert E. Wilkinson that rely on them.[1] The court invited plaintiff to file a written response to this charge, but plaintiff declined to do so.

_____

[1] Defendants also ask the court to strike other portions of Wilkinson's declaration. However, since plaintiff does not cite to these disputed portions in its response to defendants' statement of material facts, the court need not address these portions.

Even if plaintiff improperly failed to produce these documents as defendants charge, the court would find that such failure was harmless and would not support sanctioning plaintiff as defendants request, by striking the exhibits. It is apparent from defendants' motion to strike and defendants' statement of material facts that defendants were aware from deposition testimony by plaintiff's witnesses that plaintiff began as a sole proprietorship, then was incorporated in California, and then in Washington. Thus, defendants would not be prejudiced by plaintiff's use of documents reflecting this transformation and the accompanying transfers of assets now. The court declines to strike these exhibits to plaintiff's response to defendants' statement of material facts; as noted above, however, the court will not consider these documents as support for additional facts presented in plaintiff's brief.

Defendants also seek to strike certain paragraphs of plaintiff's Declaration of S. Robert Sherby, as based on documents not disclosed in discovery. However, in its response to defendants' statement of material facts, plaintiff does not cite to any of the paragraphs defendants seek to strike. Accordingly, the court need not address this portion of defendants' motion to strike.

**D.    Other Objections to Plaintiff's Response to Defendant's Statement of Material Facts**

Defendants seek to strike plaintiff's exhibits 30, 33, and 34, as lacking foundations. Defendants' objection to these exhibits has merit; accordingly, these exhibits are stricken.

Finally, defendants object to plaintiff's reliance on deposition testimony of Kathy Parker and Klaus Sterling, contending that it is inadmissible hearsay and the subject of partially destroyed evidence that plaintiff failed to preserve or produce. However, plaintiff does not specifically cite to this testimony in its response to defendants' statement of material facts.

Therefore, the court need not address this objection.

## II.    Factual Background

### A.    Facts Relating to Plaintiff's Claims

In 1986, plaintiff hired artist William B. Boland to create a map of California tourist attractions. This map, entitled "California Adventure Map 1986-1987," bears a copyright notice of 1986, and Boland's name. The phrase "California Adventure Map" appears on plaintiff's postcards, coloring maps, placemats, and posters that are sold to retailers and consumers. Plaintiff uses these items as advertising media for attractions and businesses in California.

In 1986, when the California Adventure Map was created, Robert Wilkinson operated World Impressions as a sole proprietorship. In 1988, Wilkinson's son-in-law, S. Robert Sherby, incorporated an entity called "World Impressions, Inc." in California ("World Impressions/California"). Plaintiff later was incorporated in Washington on February 12, 1992, and World Impressions/California was dissolved on April 7, 1993. Plaintiff currently has no employees, other than Sherby, its president.

In 1990, World Impressions/California began using a computer system to track the sales and distribution of its products. Apparently, use of this computer system continued after World Impressions/California was dissolved and plaintiff was incorporated in Washington. Records from this computer system reflect that World Impressions (either the California corporation or plaintiff) gave away eleven samples of products bearing the words "California Adventure" between January 1, 1990 and September 22, 1998. During the same period, World Impressions made six sales of products bearing the words "California Adventure." These six sales totaled $133.25, and occurred between April 1993 and February 1994.

7

Since 1997, Source Map, Inc. has controlled the sales and distribution of plaintiff's products. According to plaintiff, in 1999, Sherby made a second rendition of the California Adventure Map by digitally copying the first edition of the map, with digitally-made modifications. Plaintiff has produced 36 contracts signed on behalf of Source Map, Inc., dated between December 1998 and July 1999, for advertising on a second edition of the California Adventure Map.

Meanwhile, on July 12, 1996, Disney publicly announced that it intended to open a theme park called "Disney's California Adventure." On January 31, 1996, Disney had received a full trademark search report prepared by a commercial trademark search firm, directed to the mark "California" for theme park or amusement park entertainment services. On September 16, 1996, Disney received another full trademark search report from the firm directed to the mark "Disney's California Adventure" for theme parks, clothing, jewelry, key chains, mugs, toys, games, printed matter, and audio and video recordings. Neither search report disclosed any of plaintiff's "California Adventure" products.

On February 24, 1997, Disney filed an Intent-to-Use trademark application for the mark "Disney's California Adventure" in the United States Patent and Trademark Office. The Patent and Trademark Office approved Disney's application on September 2, 1997. Disney received five extensions to file a statement of use pending the opening of the theme park. Disney abandoned this application on November 26, 2000, because it had not yet opened the park and had exhausted the allowed time for extensions. Disney filed a new Intent-to-Use application for the mark "Disney's California Adventure" the following day, on November 27, 2000. Disney's California Adventure theme park opened on February 8, 2001.

8

On July 13, 2001, plaintiff filed a trademark application with the United States Patent and Trademark Office for registration of the mark "CALIFORNIA ADVENTURE." Plaintiff claimed use of the mark as early as October 1985, and use in interstate commerce as early as April 1986 for "postcards, puzzles, posters, and maps and advertising and promotion of theme parks, amusement parks and attractions." The Patent and Trademark Office refused registration on September 21, 2001.[2]

## B. Facts Relating to Disney's Counterclaims

As an initial matter, the court notes that plaintiff's statement of material facts in support of its motion for summary judgment fails to comply with the requirements of Local Rule 56.1. The portion of the rule that plaintiff ignores in this instance provides that a party filing a motion for summary judgment must file a statement of material facts that "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). In contravention of this requirement, plaintiff presents its statement of material facts in the form of over four pages of multi-sentence, unnumbered paragraphs. The court would be justified in denying plaintiff's motion for summary judgment based on plaintiff's failure to comply with the local rules. See LR 56.1(a). However, the court will reluctantly consider plaintiff's statement, despite its deficiencies. Further, the court notes that plaintiff did not respond to Disney's Statement of Additional Facts, and accordingly those facts are deemed

---

[2] The Patent and Trademark Office refused plaintiff's mark registration partially on the basis that the mark "CALIFORNIA ADVENTURE" is geographically deceptively misdescriptive because plaintiff's products originate in Washington, and not California. Plaintiff's application remains pending.

admitted. <u>See</u> LR 56.1(a).

Plaintiff uses a stylized form of the word "Disneyland" and a castle design to identify Disneyland's location on its California Adventure Map. The typestyle of the word "Disneyland" on plaintiff's map is similar or identical to that of Disney's trademark, and the castle design on the map is similar or identical to Disney's "CASTLE DESIGN" mark. Disney contends that plaintiff's use infringes its "DISNEYLAND" and "CASTLE DESIGN" marks.

Disney has used its "DISNEYLAND" mark since at least 1955 for its amusement park and related merchandise. Disney registered the mark in 1976 for merchandise such as key rings, jewelry, books, magazines, greeting cards, bags, drinking glasses, clothing, and balloons. It registered the mark in 1986 for its amusement park services.

Disneyland is Disney's theme park located in Anaheim, California. A castle is one attraction within the park, and a hotel named "Disneyland" is also located there. Highway signs and public street signs use the word "Disneyland" to indicate Disneyland's location. Some maps (including some produced by Disney) and advertisements available to the public use the "DISNEYLAND" mark or a castle design to show Disneyland's location. The Anaheim Convention Center uses the "DISNEYLAND" mark and a castle design to show Disneyland's location. Some Internet websites also use the "DISNEYLAND" mark or a castle design to show Disneyland's location.

Disney affiliate Walt Disney Pictures and Television has used a castle design logo featuring a castle silhouette with horizontal lines extending through the castle since July 24, 1985, when the logo appeared in connection with the movie *The Black Cauldron*. The same logo is used by Disney affiliate Buena Vista Home Entertainment. Disney has never used this logo as

10

a trademark or service mark for Disneyland.

Plaintiff has produced no documentary evidence showing that Disney gave it permission to use its marks on the first edition of the California Adventure Map. Although plaintiff claims it received oral authorization to do so, it cannot identify the Disney representative who gave such authorization. Plaintiff did not seek permission from Disney to use the "DISNEYLAND" and "CASTLE DESIGN" marks when plaintiff produced the second edition of the California Adventure Map in 1999. Disney made no objection to the way plaintiff identified Disneyland on its maps from 1986 to 2002.

### III.  Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000); Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A.  Defendants' Motion for Summary Judgment as to Plaintiff's Claims

Defendants first argue that they are entitled to judgment on all counts of plaintiff's

11

complaint, because plaintiff's "CALIFORNIA ADVENTURE" mark is not entitled to protection. To prevail on a claim brought under 15 U.S.C. § 1125(a), a plaintiff must demonstrate the validity of its mark, and that the subsequent user's actions caused a likelihood of confusion among consumers as to the source of the goods or services. Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir. 1998); Echo Travel, Inc. v. Travel Assocs., Inc., 870 F.2d 1264, 1266 (7th Cir. 1989).

### 1. Validity of Plaintiff's "CALIFORNIA ADVENTURE" Mark

When the mark at issue is not registered with the United States Patent and Trademark Office, as in the case of plaintiff's "CALIFORNIA ADVENTURE" mark, the claimant bears the burden of establishing that its mark is entitled to protection. See Platinum Home Mortgage Corp., 149 F.3d at 727. The level of protection to which a mark is entitled depends on its distinctiveness. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-69 (1992). Marks are classified into five categories of distinctiveness, ranging from the least distinctive "generic" mark to the most distinctive "fanciful" mark. Id. at 768.

In the middle of this range of categories are the "descriptive" and "suggestive" marks. See id. at 768-69. A descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service." Platinum Home Mortgage Corp., 149 F.3d at 727 (quoting Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 936 (7th Cir. 1986)). A suggestive mark only indirectly suggests a product's qualities. See Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 952-53 (7th Cir. 1992). To determine whether a mark is descriptive or suggestive, the court uses the "degree of imagination test": "[I]f a mark imparts information directly it is descriptive. If it stands for an idea which requires some operation of the imagination

12

to connect it with the goods, it is suggestive." Id. at 952. Thus, for example, the phrase "Thirst Aid" is descriptive when used for a drink that quenches thirst, while "Roach Motel" is suggestive when used for an insect trap. See id. at 953.

The distinction between descriptive and suggestive marks is critical because a suggestive mark is considered to be inherently distinctive, and therefore entitled to full trademark protection. See Two Pesos, Inc., 505 U.S. at 768-69. A descriptive mark, on the other hand, is generally not protected unless it *becomes* distinctive, that is, unless it "acquires secondary meaning 'in the collective consciousness of the relevant community.'" See Platinum Home Mortgage Corp., 149 F.3d at 727 (quoting Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 1157 (7th Cir. 1996)).

Defendants argue that plaintiff's "CALIFORNIA ADVENTURE" mark is descriptive, because it merely describes what is depicted on plaintiff's maps – California adventures. In response, plaintiff cites the Merriam-Webster Dictionary's definition of the word "adventure" as an undertaking that usually involves danger and risk. Plaintiff argues that imagination is required to connect this notion of "adventure" to the safe entertainment attractions identified on the California Adventure Map, and that the "CALIFORNIA ADVENTURE" mark therefore is suggestive rather than descriptive.

The court disagrees. Plaintiff's own president, S. Robert Sherby, testified that the California Adventure Map "is a listing of California adventures, that's what it is. It's a depiction of California adventures." Sherby further testified that the map "shows people where you can go and see an attraction and have a California adventure." Plaintiff attempts to distance itself from these statements by denying the accuracy of the transcription. In its response to defendants' statement of material facts, plaintiff states that "the word 'adventure' appears to be a typo and

13

should read 'attraction.'" Plaintiff provides no evidentiary support for this outlandish statement. Nor does plaintiff explain why Sherby made no changes to the transcript of his testimony to correct the "typo." See Fed. R. Civ. P. 30(e) (allowing deponent to note changes to deposition transcript within thirty days after it becomes available). The court views Sherby's admission that the California Adventure Map depicts California adventures as evidence that the mark "CALIFORNIA ADVENTURE" is descriptive.

The only evidence plaintiff offers to counter its own admission that its map depicts California adventures is a dictionary definition. This is insufficient to show that a material issue of disputed fact remains for decision. As the Seventh Circuit has noted, "dictionaries reveal a range of historical meanings rather than how people use a particular phrase in contemporary culture." TE-TA-MA Truth Foundation – Family of URI, Inc. v. World Church of the Creator, 297 F.3d 662, 666 (7th Cir. 2002). Indeed, Merriam-Webster also defines "adventure" as "a novel, exciting, or otherwise remarkable event or experience." Webster's 3rd New Int'l Dictionary 31 (1986). As Sherby's testimony evidences, the word "adventure" is not limited to the narrow meaning plaintiff now offers. No mental leap is required to understand that a "California Adventure Map" is a map that shows the locations of tourist attractions in California. The court concludes that, as a matter of law, plaintiff's mark "CALIFORNIA ADVENTURE" is descriptive.

Since plaintiff's "California Adventure" mark is descriptive, and therefore not inherently distinctive, it is not entitled to trademark protection unless plaintiff demonstrates that the mark has acquired secondary meaning that identifies its distinctiveness. See Platinum Home Mortgage Corp., 149 F.3d at 728. A mark acquires secondary meaning when "it has been used so long and

14

so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." Packman v. Chicago Tribune Co., 267 F.3d 628, 641 (7th Cir. 2001). A plaintiff may establish proof of secondary meaning through direct consumer testimony, consumer surveys, and evidence of length and manner of use, amount and manner of advertising, volume of sales, place in the market, and intentional copying. Id.

Plaintiff has offered no direct evidence of consumer recognition, such as consumer testimony or consumer surveys. Drawing all reasonable inferences in plaintiff's favor, plaintiff created its map bearing the "CALIFORNIA ADVENTURE" mark in 1986. However, the only evidence before the court as to plaintiff's sales volume since 1986 is that plaintiff made six sales of products bearing the words "California Adventure" between April 1993 and February 1994, totaling $133.25. Plaintiff also gave away eleven samples of products bearing the words "California Adventure" between January 1, 1990 and September 22, 1998. Plaintiff has produced evidence that it entered into contracts with 36 companies between December 1998 and July 1999, under which plaintiff would advertise those companies on a second edition of its California Adventure Map, but there is no evidence before the court that any second edition "California Adventure" product was actually distributed. There is no evidence before the court that plaintiff ever advertised products bearing the words "California Adventure." Nor is there any evidence of intentional copying. Although plaintiff's "CALIFORNIA ADVENTURE" mark may have been in existence for a relatively long time, there is next to no evidence that the public was exposed to it. The record before the court fails to establish proof of any secondary meaning.

Because plaintiff's "CALIFORNIA ADVENTURE" mark is not inherently distinctive,

and has not acquired secondary meaning, it is not entitled to protection under the Lanham Act. Therefore, judgment is granted in defendants' favor as to Count I of plaintiff's complaint. In addition, claims of common law trademark infringement and unfair competition, and claims brought under the Illinois Trademark Registration Protection Act, 765 ILCS 1036/65, Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., and Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., are resolved in the same manner as Lanham Act claims. See Echo Travel, Inc., 870 F.2d at 1266 (common law trademark infringement and unfair competition); Kern v. WKQX Radio, 529 N.E.2d 1149, 1155-56 (Ill. App. Ct. 1988) (trademark must be distinctive to be entitled to protection under Illinois Trademark Registration Protection Act); D 56, Inc. v. Berry's, Inc., 955 F. Supp. 908, 920 (N.D. Ill. 1997) (Illinois Uniform Deceptive Trade Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act). Accordingly, summary judgment is also granted in defendants' favor as to Counts III, IV, and V of plaintiff's complaint.

Count II of plaintiff's complaint alleges a claim of federal trademark dilution under 15 U.S.C. § 1125(c). In order to prove federal trademark dilution, a plaintiff must establish, among other things, that its mark is famous. Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 466 (7th Cir. 2000). Factors relevant to a determination of whether a mark is famous include: (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (3) the duration and extent of the advertising and publicity of the mark; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade

used by the marks' owner and junior user; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark was registered. 15 U.S.C. § 1125(c)(1)(A)-(H). For the same reasons that plaintiff's "CALIFORNIA ADVENTURE" mark is not entitled to protection under 15 U.S.C. § 1125(a), the court finds that plaintiff has not offered sufficient evidence to establish that its "CALIFORNIA ADVENTURE" mark is famous, and therefore entitled to protection under 15 U.S.C. § 1125(c). See also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:91.1 (4th ed. 2001) ("[a] trademark cannot be 'famous' unless it is 'distinctive'"). Summary judgment is granted in defendants' favor on Count II of plaintiff's complaint.

Count VI of plaintiff's complaint alleges a claim under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). In order to prove a cybersquatting claim, a plaintiff must show that its mark was distinctive at the time the defendant registered an identical or confusingly similar domain name. See 15 U.S.C. § 1125(d)(1)(A)(ii)(I). As discussed above, plaintiff has failed to establish that its "CALIFORNIA ADVENTURE" mark is distinctive. Therefore, summary judgment is granted in Disney's favor on Count VI of plaintiff's complaint.

**B.  Cross-Motions for Summary Judgment as to Disney's Counterclaims**

Disney's counterclaims allege trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and dilution under 15 U.S.C. § 1125(c). These counterclaims allege that plaintiff infringed Disney's "DISNEYLAND" and "CASTLE DESIGN" marks by using a stylized rendition of the word "Disneyland" and a castle design on its maps that are similar to Disney's marks. The parties have filed cross-motions for summary judgment as to Disney's counterclaims.

17

### 1. Fair Use Defense

Plaintiff's maps show the location of Disney's Disneyland theme park using the word "Disneyland" in a stylized script below a castle design. Plaintiff contends that this use is proper under the fair use doctrine. "The fair use doctrine is based on the principle that no one should be able to appropriate descriptive language through trademark registration." Sands, Taylor & Wood Co., 978 F.2d at 951. Thus, "*nominative use* of a mark – where the only word reasonably available to describe a particular thing is pressed into service – lies outside the strictures of trademark law...[S]uch use is fair because it does not imply sponsorship or endorsement by the trademark holder." New Kids on the Block v. New America Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992). To prevail under the fair use defense, plaintiff must establish that (1) it used the word "Disneyland" and castle design in a non-trademark use; (2) the word "Disneyland" and the castle design are descriptive of plaintiff's goods or services; and (3) plaintiff used the word "Disneyland" and castle design "fairly and in good faith only to describe" its "goods or services...or their geographic location." See 15 U.S.C. § 1115(b)(4); Packman, 267 F.3d at 639.

Disney concedes, as it must, that plaintiff has the right to describe Disneyland's location on a map with the word "Disneyland" in a plain printed or typed form. Instead, Disney challenges plaintiff's use of the stylized form of the word "Disneyland" and castle design. Plaintiff responds that its use of these designs does no more than is necessary to identify Disneyland's location, as evidenced by the fact that Disneyland is accurately located on the map, Disneyland is not featured or prominently displayed as compared to other attractions on the map, and plaintiff prominently displays its own "CALIFORNIA ADVENTURE" mark to identify the source of the map.

Plaintiff relies on four cases as support for its position. None of these cases involves a party that, like plaintiff here, uses the distinctive form of a trademark holder's mark when a plain form is available. For example, in Schafer Co. v. Innco Mgmt. Corp., 797 F. Supp. 477 (E.D.N.C. 1992), aff'd 995 F.2d 1064 (4th Cir. 1993), the district court held that a motel's use of a billboard that directed motorists to use the "South of the Border" exit to reach its motel was a fair use, where the words "South of the Border" were in upper-case solid white lettering, and did not take the form of amusement park South of the Border's logo. Similarly, in Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350 (9th Cir. 1969), the Ninth Circuit Court of Appeals found that a repair business's use of the words "Volkswagen Service" and "VW Service" in advertising was a fair use, where the business did not use Volkswagen's distinctive lettering style, color scheme, or the encircled "VW" emblem. In New Kids on the Block v. New America Pub., Inc., 971 F.2d 302 (9th Cir. 1992), and WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42 (1st Cir. 1991), courts found the use of names permissible where there was no word other than those names to denote the subjects; there is no mention in either case that a logo or other distinctive descriptor was used. See New Kids on the Block v. New America Pub., Inc., 971 F.2d 302 (9th Cir. 1992) (upholding newspaper's use of polling questions naming the band "New Kids on the Block," because there was no word available to denote the band other than its name); WCVB-TV v. Boston Athletic Ass'n, 926 F.2d 42 (1st Cir. 1991) (upholding television station's use of name "Boston Marathon" to describe that event, where use did not suggest official sponsorship). Moreover, the court in New Kids on the Block specifically noted that a user could not take an action that would suggest sponsorship or endorsement by the trademark holder, such as using the holder's distinctive lettering. New Kids on the Block, 971 F.2d at 308 & n.7.

19

Unlike in the cases cited by plaintiff, plaintiff's use of the stylized form of the word "Disneyland" and the castle design goes beyond mere nominative use. Although the Disney marks may not be larger than the other identifiers on plaintiff's maps, plaintiff uses the stylized form of the word "Disneyland" and the distinctive castle design as "attention-getting symbol[s]." See Sands, Taylor & Wood Co., 978 F.2d at 954. Moreover, plaintiff's use of its own mark in conjunction with the Disney marks does not save plaintiff's use from being a trademark use. See id. By using the stylized form of the word "Disneyland" and the castle design, rather than a plain rendition of the word "Disneyland," plaintiff does more than simply identify Disneyland's location on a map. Instead, it implies that Disney sponsored or endorsed its maps. The court finds that this use is a trademark use, and that accordingly the fair use defense is unavailable to plaintiff.

### 2. Trademark Infringement and Unfair Competition

As with a claim of unfair competition under 15 U.S.C. § 1125(a), in order to succeed on a federal trademark infringement claim under 15 U.S.C. § 1114, Disney must establish that it has a protectable trademark and that plaintiff's misuse of the trademark creates a likelihood of confusion among consumers. See Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir. 2000).

Disney registered its "DISNEYLAND" mark in 1976 for merchandise such as key rings, jewelry, books, magazines, greeting cards, bags, drinking glasses, clothing, and balloons, and in 1986 for its amusement park services. Disney has used its "DISNEYLAND" mark since at least 1955 for its amusement park and related merchandise. Therefore, this mark is presumptively valid and protectable. See 15 U.S.C. § 1115(a), 1057(b); Thomas & Betts Corp. v. Panduit

Corp., 138 F.3d 277, 301 (7th Cir. 1998).

Disney's affiliates have used the "CASTLE DESIGN" logo since at least 1985 to identify their films and videos. This mark is a "fanciful" one, and as such is inherently distinctive and entitled to full trademark protection. See Two Pesos, Inc., 505 U.S. at 767-68. Plaintiff does not dispute that Disney's "CASTLE DESIGN" and "DISNEYLAND" marks are entitled to protection.

The court next examines whether plaintiff's display of the word "Disneyland" and the castle design on its maps creates a likelihood of confusion among consumers. The following factors are relevant to this analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of Disney's marks; (6) actual confusion; and (7) plaintiff's intent to "palm off" its product as Disney's. See Packman, 267 F.3d at 643. The weight assigned to each of these factors varies depending on the facts presented, but the similarity of the marks, actual confusion, and the user's intent generally are the most important. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 898 (7th Cir. 2001).

Plaintiff does not dispute that its rendition of the word "Disneyland" and the castle design on its map is at least similar to Disney's "DISNEYLAND" and "CASTLE DESIGN" marks. Nor could it. The design plaintiff uses to denote Disneyland on its maps, along with Disney's "DISNEYLAND" and "CASTLE DESIGN" marks, are reproduced at the end of this opinion.[3] Even a careful comparison reveals that the design used by plaintiff incorporates two components

_____

[3] The court reproduces these images without the permission of plaintiff or Disney, "a good example of the fair-use doctrine in action." See Ty, Inc. v. Publications Intern. Ltd., 292 F.3d 512, 519 (7th Cir. 2002), petition for cert. filed (U.S. Nov. 8, 2002) (No. 02-727).

that are nearly identical to two of Disney's marks. Moreover, in determining whether two marks are similar, it is "'inappropriate to focus on minor stylistic differences to determine if confusion is likely' if the public does not encounter the two marks together." Ty, Inc., 237 F.3d at 898 (quoting Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997). The similarity of the marks weighs in favor of a finding of likelihood of confusion.

On the issue of actual confusion, plaintiff has presented a Disney attorney's testimony that she was unaware of any confusion between plaintiff's use of the word "Disneyland" on its maps, and the "DISNEYLAND" trademark. Disney has presented no evidence of actual confusion as to either the "DISNEYLAND" or "CASTLE DESIGN" mark. This factor weighs against a finding of likelihood of confusion.

Next, the court examines plaintiff's intent. Plaintiff argues that it used a stylized version of the word "Disneyland" and a castle design in good faith merely to describe Disneyland's location. As evidence of its good faith, plaintiff points to the fact that Disneyland is accurately placed on the map in its proper location, that Disneyland is not featured or prominently displayed, and that plaintiff used its "CALIFORNIA ADVENTURE" mark to identify the source of the map. The court would find this argument more persuasive if plaintiff had used a plain printed form of the work "Disneyland." As with its fair use defense, however, this argument fails to justify plaintiff's use of Disney's typeface and castle design as a good faith use.

Nor is the court persuaded by plaintiff's evidence that the images on its map were "hand-rendered" rather than exact copies of Disney's marks, or that fonts similar or identical to the font

22

used to create the "DISNEYLAND" mark are available to the public.[4]  Plaintiff chose to use

nearly identical renditions of Disney's marks, however it created them.

Plaintiff also relies on cases involving parodies to support its argument that it used the

designs in good faith.  This reliance is misplaced.  Cases such as Yankee Publ'g Inc. v. News

Am. Publ'g. Inc., 809 F. Supp. 267 (S.D.N.Y. 1992), and L.L. Bean, Inc. v. Drake Publishers,

Inc., 811 F.2d 26 (1st Cir. 1987), stand for the proposition that the First Amendment protects the

artistic use of a trademark for the purpose of conveying satirical or humorous commentary.  In

this case, plaintiff's position is that its purpose in using the stylized version of the word

"Disneyland" and the castle design was merely to indicate the fact of Disneyland's location.  No

expressive or artistic use is implicated in such a use; as noted previously, plaintiff could have

achieved the same purpose by using a plain printed version of the word "Disneyland."

By contrast, Disney has presented evidence that supports a finding that plaintiff intended

to lead its customers to the incorrect assumption that Disney sponsored its maps.  Plaintiff sells

advertising by many of the attractions that appear on its maps; the maps themselves are

advertising for those attractions.  Plaintiff's policy was not to use logos of any attraction without

first obtaining the attraction's authorization.  Despite this policy, plaintiff has produced no

evidence that it obtained authorization from Disney to use the "DISNEYLAND" mark.  The

court concludes that plaintiff intended to "pass off" Disneyland's appearance on the map as

authorized or sponsored by Disney.

Disney also has presented sufficient evidence of the strength of its "DISNEYLAND" and

---

[4]  Disney has moved to strike this evidence.  However, since the court does not find the
evidence persuasive, the court need not strike it.

"CASTLE DESIGN" marks. "Strength," in this context, "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular ... source." Eli Lilly & Co., 233 F.3d at 464 (quoting Sands, Taylor & Wood Co., 978 F.2d at 959). Disney has used its "DISNEYLAND" mark since 1955, and its "CASTLE DESIGN" mark since 1985. Millions of people travel to Disneyland annually, from all over the world, and Disney spends million of dollars annually advertising the park. Plaintiff does not dispute that the "DISNEYLAND" and "CASTLE DESIGN" marks are strong.

Finally, neither party has presented argument on the remaining factors of similarity of the products, area and manner of concurrent use, and degree of care likely to be exercised by consumers. The court disregards these factors in its analysis.

Although likelihood of confusion is a factual issue, summary judgment is proper on this issue "if the evidence is so one-sided that there can be no doubt about how the question should be answered." Door Sys., Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 171 (7th Cir. 1996). Disney need not prove each and every factor to prevail, and plaintiff need not refute each and every factor to avoid summary judgment. See AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 616 (7th Cir. 1993). Rather, the "weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other." Id.

In this case, the similarity between the marks, plaintiff's intent, and the strength of the "DISNEYLAND" and "CASTLE DESIGN" marks weigh in favor of a finding of likelihood of confusion. The lack of evidence of actual confusion weighs against a finding of likelihood of confusion. In some cases, lack of evidence of actual confusion may be conclusive to a finding of

no likelihood of confusion. See Nike, Inc. v. Just Did It Enters., 6 F.3d 1225, 1231 (7th Cir. 1993) (noting that "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion"). However, this is not such a case. Here, the strength of Disney's marks, along with the near identity between the Disney marks and the design used by plaintiff, and plaintiff's intent to make it appear that its maps were sponsored by Disney create a likelihood of confusion, despite the lack of evidence of actual confusion. See Roulo v. Russ Berrie & Co., 886 F.2d 931, 938 (7th Cir. 1989) (finding adequate evidence of likelihood of confusion to support jury verdict for plaintiff, "even absent the difficult-to-acquire evidence of actual confusion"); see also AHP Subsidiary Holding Co., 1 F.3d at 618 ("this circuit has repeatedly stated that actual confusion need not be demonstrated; the test is likelihood of confusion and actual confusion is only one element of the test."). Since Disney's "DISNEYLAND" and "CASTLE DESIGN" marks are entitled to protection and plaintiff's use of these marks creates a likelihood of confusion, the court grants summary judgment in Disney's favor as to Counts I and II of its counterclaim.

### 3. Dilution

In response to Disney's dilution claim, plaintiff again invokes the "fair use" defense, and argues that its use of the marks to denote Disneyland's location on its map is a protected form of expression. The court has already rejected these arguments in the context of its discussion of Disney's trademark infringement and unfair competition claims.

Plaintiff next argues that Disney has not presented evidence that its marks are famous for plaintiff's products, that is, that the marks are famous relating to maps, post cards, tray liners, posters and puzzles. In order to prove trademark dilution under 15 U.S.C. § 1125(c), Disney

25

must establish that: (1) its marks are famous; (2) plaintiff's use began after the marks became

famous; (3) plaintiff's use "causes dilution" of the marks; and (4) plaintiff's use is commercial

and in commerce.  See Eli Lilly & Co., 233 F.3d at 466.

The factors relevant to an analysis of whether a mark is famous are set forth in Part

III.A.1 of this opinion.  Using this analysis, the court concludes that the "DISNEYLAND"[5] mark,

as a fanciful mark, is distinctive.  In addition, as discussed in the court's analysis of Disney's

trademark infringement and unfair competition counterclaims, Disney has used this mark since

1955 for its amusement park and related merchandise, it spends millions of dollars annually

advertising Disneyland, and Disneyland attracts millions of visitors from all over the world.

Although plaintiff has presented evidence that others use the word "Disneyland" or designs

relating to Disneyland, the evidence presented is not sufficient to show that Disney's marks have

lost their distinctiveness due to extensive copying by third parties.  Disney's "DISNEYLAND"

mark has been registered since 1976 for its merchandise, and since 1986 for its park.  The court

concludes that based on the wide and long-standing publicity the "DISNEYLAND" mark has

received, it is famous, even if it was not used in relation to the specific types of products made by

plaintiff.[6]

Since plaintiff does not raise any questions regarding the junior status of plaintiff's use of

---

[5] Disney has presented little evidence as to the extent of its affiliates' use of the
"CASTLE DESIGN" mark, other than to state that it has been used in the film and video
industry.  The court confines this discussion to the "DISNEYLAND" mark.

[6] Disney has moved to strike plaintiff's argument that Disney has not shown that its
marks are famous for plaintiff's goods, on the ground that plaintiff raised this argument for the
first time in its reply brief.  Since the court does not find this factor decisive in any event, the
motion to strike is denied as to this issue.

these marks, or the commercial purpose of plaintiff's use, the only remaining issue is whether

plaintiff's use of Disney's marks causes dilution. To prove that plaintiff's use causes dilution,

Disney need only show that dilution is likely, and need not show actual dilution. See Eli Lilly &

Co., 233 F.3d at 468. Dilution may occur by either blurring or tarnishing. Id. at 466-67.

Dilution by blurring occurs when consumers "'see the ... mark used on a plethora of different

goods and services,'... 'raising the possibility that the mark will lose its ability to serve as a

unique identifier of the [markholder's] product.'" Id. at 466 (quoting Hormel Foods Corp. v. Jim

Henson Prod., Inc., 73 F.3d 497, 506 (2d Cir. 1996)).

Two factors are relevant to the court's analysis of whether dilution by blurring occurred:

(1) the similarity between the marks, and (2) the renown of the Disney marks. See Eli Lilly &

Co., 233 F.3d at 469. The court has already discussed the similarity between the Disney marks

and the design used by plaintiff and concluded that they are highly similar. Although plaintiff

attempts to introduce evidence that its renditions of the marks were "hand-rendered," rather than

an actual duplication of the Disney marks, such evidence would not undermine the court's

conclusion as to the similarity of the marks. In addition, Disney's "DISNEYLAND" mark has

achieved substantial renown. The court has already noted the length of time in which the

"DISNEYLAND" mark has been used, the enormous number of visitors to the park, and the

equally enormous amount of money Disney spends advertising the park.

The court concludes that Disney has established dilution by blurring. As the court has

already discussed, plaintiff's use of the distinctive, stylized form of the word "Disneyland" on its

maps, as opposed to a plain form, implies that Disney sponsored the maps. Thus, this use lessens

the capacity of Disney's "DISNEYLAND" mark to serve as a unique identifier. Cf. Ty Inc. v.

27

Perryman, 306 F.3d 509 (7th Cir. 2002) (finding that defendant's use of "bargainbeanies.com" domain name for business of resale of Beanie Babies did not constitute dilution by blurring of Beanie name, where Beanie Baby manufacturer's market strategy encouraged such resales and defendant had no way to identify her merchandise other than through use of word "beanie"). Summary judgment is granted in Disney's favor as to Count III of its counterclaim.

**ORDERED**: Defendants' motion to strike exhibits and portions of declaration and deposition testimony submitted in support of plaintiff's response [81-1] is granted in part and denied in part. Disney's motion to strike portions of plaintiff's reply and related exhibits [70-1] is denied. Defendants' motion for summary judgment as to plaintiff's complaint [52-1] is granted. Disney's motion for summary judgment as to its counterclaims [52-2] is granted. Plaintiff's motion for summary judgment as to Disney's counterclaims [49-1] is denied.

ENTER:

George W. Lindberg
Senior United States District Judge

DEC 0 4 2002

DATED: _____





30

**Disneyland**

